AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN OF NORTH AMERICA, AFL–CIO, and Food Handlers Local 425, Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 22393.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 10, 1969.

Decided Oct. 17, 1969.

As Amended Dec. 2, 1969.

Mr. Charles Orlove, Chicago, Ill., of the bar of the Supreme Court of Illinois, pro hac vice, by special leave of court, with whom Messrs. Mozart G. Ratner, Washington, D.C., and Albert Gore, Chicago, Ill., were on the brief, for petitioners. Miss Judith A. Lonnquist, Chicago, Ill., also entered an appearance for petitioners.

Mr. Elliott Moore, Attorney, National Labor Relations Board, with whom Messrs. Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel and Marcel Mallet-Prevost, Asst. General Counsel, National Labor Relations Board, were on the brief, for respondent.

Before WRIGHT, McGOWAN and LEVENTHAL, Circuit Judges.

PER CURIAM:

In this statutory review proceeding under the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, the principal issue was whether an increase in the base rate of pay on June 6, 1966, was made unilaterally by the employer under circumstances constituting a violation of Section 8(a) (5). The Trial Examiner found from conflicting testimony that the increase was consented to by a union official having apparent authority to do so; and the Board adopted this finding.[1]

1. A differentiation made by the Trial Examiner between base and premium rates, and a consequent determination by him that there had been a unilateral increase in premium pay violative of Section 8(a) (5), was not adopted by the Board. We find no reason to disagree with the Board's conclusion on this point that the employer's increase in premium rates was merely the usual adjustment of premium rates to the base rate, and was understood as comprehended within the base pay increase.

The Board also ruled that a claim of an 8(a) (3) violation growing out of the same wage increase was unfounded because the employer had been motivated only by a need to combat the high turnover in personnel it was experiencing because of higher rates being paid by competitors in the vicinity.

On the evidence making up the record before the Board, we see no occasion to disturb the Board's resolution of these issues and its dismissal of the complaint. It is urged upon us, however, that the union was improperly restricted in its presentation of evidence. This controversy in large part swirls about a dispute as to the precise scope of the complaint. The union insists that, in addition to a charge that the June 6 base rate increase constituted bargaining in bad faith, Paragraph 15 of the complaint, set out in the margin, alleged general bad faith bargaining on or about June 6 or thereafter.[2] The General Counsel denied at the hearing that this was true, but he did not accept the seemingly sensible suggestion of the Trial Examiner that he amend his complaint by striking out Paragraph 15; and his failure to do so has generated unnecessary confusion and controversy.[3]

We think the evidence issue justifies remand of this case to the Board, and upon that remand appropriate action may be taken to clarify the status of Paragraph 15. Over and above the question of the admissibility of evidence assertedly relevant to Paragraph 15, however, we think that at least some of the evidence offered by the union was relevant to the good faith of the employer's June 6 increase. Central to our concern in this regard is the evidence offered by the union of the course of the negotiations from the time the decertification movement was initiated in May of 1966 to the giving of further wage increases in September of that year. We think that the proof offered by the union in this regard should have been admitted as relevant to the employer's purposes in respect of the June 6 increase,[4] wholly apart from whether a general bad faith

2. Commencing on or about June 6, 1966, and at all times thereafter, Respondents negotiated with the Union in bad faith and with no intention of entering into any final or binding collective bargaining agreement.

3. The Board's Rules and Regulations provide as follows (29 C.F.R. § 102.17):
   Any such complaint may be amended upon such terms as may be deemed just, prior to the hearing, by the regional director issuing the complaint; at the hearing and until the case has been transferred to the Board pursuant to § 102.45, upon motion, by the trial examiner designated to conduct the hearing; and after the case has been transferred to the Board pursuant to § 102.45, at any time prior to the issuance of an order based thereon, upon motion, by the Board."

4. Paragraph 13 of the complaint charged that "on or about June 6, 1966, Respondents granted the wage increase described above in paragraph 12, to their employees at their Springdale, Arkansas, plants." Paragraph 14 charged that "on or about June 6, 1966, Respondents granted the wage increases described above in paragraphs 12 and 13, to their employees at their Springdale, Arkansas, plants, without notification to, or bargaining with the Union, and also in order to undermine the Union and to encourage their employees to decertify the Union as their collective bargaining representative."

The Board's conclusion that the granting of the wage increase was not, in and of itself, a violation of Section 8(a) (5) of the Act as a unilateral change pending bargaining was supported, as we have noted, by the finding that the wage increase was accepted by a union agent with apparent authority to do so. These conclusions do not, in our view, foreclose a finding in this case that the raise was nonetheless part of an illegal plan to undermine the union in violation of Section 8(a) (3) of the Act. Of course, the agreement and the circumstances surrounding it are facts which the Board must consider in assessing the charge against the company.

**150**

issue was regarded as in the case. We remand to the Board for further consideration in the light of this evidence.

It is so ordered.