Lester ALLENTUCK, t/a Allen Picture Frame Co., et al., Petitioners,

v.

DISTRICT OF COLUMBIA MINIMUM WAGE AND INDUSTRIAL SAFETY BOARD, Respondent.

LARIMER'S INC., Petitioner,

v.

DISTRICT OF COLUMBIA MINIMUM WAGE AND INDUSTRIAL SAFETY BOARD, Respondent.

Nos. 5005, 5019.

District of Columbia Court of Appeals.

Argued Sept. 12, 1969.

Decided Dec. 18, 1969.

John J. Ross, Washington, D. C., with whom Francis L. Casey, Jr., and Richard S. Rodin, Washington, D. C., were on the brief, for petitioners.

David P. Sutton, Asst. Corp. Counsel, with whom Hubert B. Pair, Acting Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for respondent.

William F. Dow, III, for Neighborhood Legal Services, filed a brief as amicus curiae in No. 5005. Henry Kaiser and Ronald Rosenberg, Washington, D. C., for Greater Washington Central Labor Council, also filed a brief as amicus curiae in No. 5005.

William R. Lichtenberg, Joseph Luria, and H. Alan Young, Washington, D. C., entered appearances for petitioner in No. 5019.

Before HOOD, Chief Judge, and KELLY and NEBEKER, Associate Judges.

NEBEKER, Associate Judge.

These cases are before the court on petitions, brought by 73 retail business concerns, for review of a minimum wage order of the District of Columbia Minimum Wage and Industrial Safety Board.[1] The order, effective July 6, 1969, supersedes an earlier Minimum Wage Order No. 3 of January 27, 1962 revised December 20, 1967, pertaining to employees in the retail trade. This court has jurisdiction to review the orders of the Wage Board by virtue of D.C.Code 1967, § 36–409(a). That section provides, *inter alia,* that upon filing a timely petition the court

\* \* \* shall have exclusive jurisdiction to affirm, modify, or set aside such order in whole or in part, so far as it is applicable to the petitioner. The review by the court shall be limited to questions of law, and findings of fact by the Commissioners [now the Wage Board—see n. 1, *supra*] when supported by substantial evidence shall be conclusive. \* \* \*

---

1. The District of Columbia Minimum Wage and Industrial Safety Board, hereinafter referred to as Wage Board, acted pursuant to the District of Columbia Minimum Wage Act of 1966, D.C.Code 1967, § 36–401 et seq., and delegated authority. It has acted since Reorganization Plan No. 5, 1952, effective July 1, 1952, pursuant to delegated authority from the Board of Commissioners. D.C. Code 1967, Title 1, Appendix at 103. On August 11, 1967, Reorganization Plan No. 3, 1966, discharged the Board of Commissioners and related delegated agencies. D.C.Code 1967 (Supp. II, 1969), Title 1, Appendix at 32. The Plan transferred the Board's function to a new Commissioner, (§ 401 of the Plan). The Commissioner was authorized to delegate or redelegate his functions, (§§ 303 & 305 of the Plan). Reorganization Order No. 1, dated November 3, 1967, redelegated authority to the Wage Board which allowed it to continue functioning.

We denied a stay of enforcement of the order, requested pursuant to D.C.Code 1967, § 36–409(b), but accelerated briefing and oral argument.

The petitioners' major contentions are that: (1) the Wage Board was without jurisdiction to consider and adopt the new wage rate because of a one-year limitation imposed by D.C.Code 1967, § 36–406(a) for reconsideration of wage rates previously set in a wage order, (2) most of the sections of the wage order were beyond the delegated authority of the Wage Board to adopt because those sections appear to deal with regulatory matters, and regulatory power may not be exercised by the Wage Board, and (3) the Board's findings were not articulated with sufficient particularity and precision in relation to the applicable statutory criteria, and are unsupported by the evidence.

We conclude that the Wage Board had jurisdiction to reconsider the minimum wage rate and that it did not exceed its delegated authority in adopting any part of the challenged wage order. However, we decline, at this time, to finally review the findings of fact of the Wage Board. Instead, we deem it "just in the circumstances" to remand the record to the Wage Board in order to afford the Board an opportunity to make more detailed findings of fact under the applicable criteria for adopting a wage order. *See* D.C.Code

2. D.C.Code 1967, §§ 36–403(a), (c) and (d). This directive was complied with on December 20, 1967, in Order No. 66–1967.

3. D.C.Code 1967, § 36–406(a). As to this provision, S.Rep. No. 864, 89th Cong., 1st Sess. 8 (1965), stated, "The availability of these procedures will preclude the possibility of a wage rate becoming outmoded. It enables the District Commissioners to revise wage rates in line with increases in the cost of living."

4. That section provides in pertinent part:
    * * * [E]very employer shall pay * * * wages at the following rates:
    (i) not less than $1.25 an hour during the year beginning February 1, 1967,

1967, § 17–306; *cf.* Amalgamated Meat Cutters and Butchers v. N.L.R.B., 136 U. S.App.D.C. ——, 420 F.2d 148 (decided October 17, 1969). In so doing, we retain jurisdiction of the case.

I

*Jurisdiction to reconsider the minimum wage rate—the one-year limitation*

Congress enacted an amended minimum wage law effective February 1, 1967, that provided for a new general level of minimum income for private employment. It was the determination of Congress that such minimum wage rate should be arrived at over a period of two years beginning with not less than $1.25 an hour during the first year, $1.40 an hour during the second year, and not less than $1.60 an hour thereafter. The Act ordered the Commissioners to amend their outstanding wage orders or adopt initial wage orders for occupations not already covered to reflect the new general wage rate.[2]

■ Congress further provided that: "At any time after a wage order has been in effect for one year the Commissioners may on their own motion reconsider the wage rates set in such order."[3] The petitioners argue that D.C.Code 1967, § 36–403(a),[4] which established the rates, and D.C.Code 1967, § 36–406(a),[5] which

    (ii) not less than $1.40 an hour during the year beginning February 1, 1968, and
    (iii) not less than $1.60 an hour thereafter, whichever is higher.

5. D.C.Code 1967, § 36–406(a) states:
    At any time after a wage order has been in effect for one year the Commissioners may on their own motion reconsider the wage rates set in such wage order. If, after investigation, the Commissioners are of the opinion that any substantial number of workers in the occupation covered by such wage order are receiving wages insufficient to provide adequate maintenance and to protect health they may convene an ad hoc advisory committee for the pur-

allows reconsideration of existing orders, preclude such reconsideration of a wage rate if a new rate has been in effect less than one year. This approach to the Act ignores the fact that Congress was careful in its use of the terms "wage order" and "wage rate". Section 36–406 (a), *supra*, is quite clear. It is the wage order and not a wage rate that must be in effect for one year. It is immaterial that the order establishing new wage rates was a ministerial act ordered by Congress[6] to raise any existing lesser wages.

■ The history of the Act is helpful on this point. The Senate-enacted version[7] automatically increased the District of Columbia minimum wage rates each time the rates under the Fair Labor Standards Act of 1938[8] increased. The conferees of the House and Senate deleted this language and substituted instead the rates as established in the Fair Labor Standards Act.[9] The Senate report on the Fair Labor Standards Act[10] states:

> The increase in the minimum wage to $1.60 beginning February 1, 1968, * * represented a compromise between those who wanted $1.75 per hour minimum at an earlier date and those who opposed such an increase and wanted a later effective date of increase.

The Act retained the escalation method of effectuating this newly determined level for minimum wages. The House report[11] indicates the escalation method was

utilized to "reduce the economic shock of reaching the minimum rate in one step." Accordingly, it is clear that the escalation provisions of the Act were an accommodation of the competing interests of management and labor. The Wage Board was expressively sensitive to the need for this accommodation. It stated:

> In order to allow employers to adjust to the increase and to lessen the impact of the increase so as not to threaten the stability of the industry, the Board ordered an interim rate of $1.80 an hour effective 60 days after the date on which the wage order is signed.

We, therefore, hold that in reconsidering the wage rates established in the 1967 order the Wage Board did not act in excess of its authority as prescribed in § 36–406(a), *supra*.

## II

*The power of the Wage Board to include regulatory-type provisions in the Wage Order*

The thrust of petitioners' argument is that parts of the Wage Order were beyond the power of the Wage Board to adopt because the authority under the regulation-making provision, D.C.Code 1967, § 36–408, has been reserved to the Commissioners by virtue of Section 2 of District of Columbia Minimum Wage Amendments Act of 1966, 80 Stat. 970 (1966).[12]

---

pose of considering and inquiring into and reporting to the Commissioners on the subject investigated by the Commissioners and submitted by them to such committee.

6. D.C.Code 1967, § 36–403(c) (1).

7. S. 19, 89th Cong., 1st Sess. § 3(a) (1965).

8. 29 U.S.C. § 206(a) (1), as amended, (Supp. III, 1967).

9. H.R.Rep. No. 2175, 89th Cong., 2nd Sess. 15 (1966).

10. S.Rep. No. 1487, 89th Cong., 2nd Sess. 3 (1966), U. S. Code Cong. & Admin. News, p. 3002.

11. *See* n. 9, *supra*.

12. Pub.L. No. 89–684, in addition to the District of Columbia Minimum Wage Act, contains the District of Columbia Minimum Wage Amendments Act. Section 2 provides:
   No amendments made by this Act shall be construed so as to affect the authority vested in the Board of Commissioners of the District of Columbia by Reorganization Plan Numbered 5 of 1952 (66 Stat. 824). The performance

Virtually the entire wage order is challenged because, in petitioners' view, it is, with the exception of the hourly wage rate provision, a compilation of regulations specifically provided for under § 36–408, *supra*. We think, however, that petitioners misconceive the function of regulations in the scheme set out by the Act. Regulations are to apply generally to all industries and related governmental functions while wage orders "zero-in" on a specific trade or industry to deal with the unique problems of each. Some overlapping between wage orders and regulations was clearly contemplated when §§ 36–403 (c), 36–407(c), and 36–408, *supra*, are read together. Indeed, if petitioners were correct a wage order could only set minimum wages. This, of course, would be contrary to what Congress intended in § 36–403, *supra*, where it specifically approved and directed that previous wage orders be amended so that provisions like some of those here challenged would con-

form to a new congressionally determined minimum.

Pursuant to § 36–406(a), *supra*, the Wage Board preliminarily determined that a general increase in wages and related matter was needed. It convened an ad hoc advisory committee [13] to assist in making the necessary inquiry and determinations relating to minimum income. The committee deliberated and returned its recommendation within the 60-day limitation.[14]

Thereafter, the Wage Board published a copy of the recommendations in the form of a proposed wage order.[15] Accompanying the proposed order was a notice of a public hearing [16] which allowed the interested public to present data and testimony in support of or in opposition to the order.[17]

This, along with the recommendations of the committee, was considered by the Board.[18] It thereafter published a final

of any function vested by this Act or by amendments made by this Act in the Board of Commissioners or in any office or agency under the jurisdiction and control of said Board of Commissioners may be delegated by said Board of Commissioners in accordance with section 3 of such plan, except the function of making and adopting regulations to carry out the purposes of this Act or of any amendment made by this Act.

13. D.C.Code 1967, § 36–406(b). The petitioners now object to the seating of the three Board members representing the government on the committee. They failed to register this complaint at the administrative level and if it were a valid point we would probably be precluded from considering it. *See* D.C.Code 1967, § 36–409(a). However, we do not think petitioners had a valid complaint in the first instance. They allege that the presence of three Board members is procedurally unfair and creates a bias in favor of an increase. These objections fail to consider that, *inter alia*, "the committee shall be composed of * * * one or more representatives of the [Wage Board]." This composition was provided by Congress only after conferees of the

House and Senate allowed the current statute, the Senate proposal, to stand unamended indicating expressly that it considered this composition fair. Petitioners' allegation of bias due to the Board's "preconceived notion that there must be an increase" fails to consider that just such a preliminary finding is statutorily required. § 36–406(a), *supra*. *See* FTC v. Cement Inst., 333 U.S. 683, 701, 68 S.Ct. 793, 92 L.Ed. 1010 (1948).

14. D.C.Code 1967, § 36–406(d).

15. D.C.Code 1967, § 36–407(a). "[T]he Commissioners [Board] shall provide, among other things, such allowances as are recommended in the report." This mandate, however, does not apply to the Board's final order. *See* § 36–407(c), *supra*.

16. § 36–407(a), *supra*.

17. The hearing was held on April 28, 1969, and the testimony of the interested parties was transcribed.

18. Meetings were held on May 6 and 7, 1969, at which time findings of fact and conclusions of law were made and the order was entered.

wage order, effective July 6, 1969, containing the new amendments and additions, and repealed the previous order.

The current order contained sections covering definitions, minimum wage and overtime compensation, employees compensated by commissions, workers under the age of 18, handicapped workers, apprentices, adult learners, minimum daily wages, split shifts, uniforms, travel expenses, deductions, allowances for meals and lodging, basis of payment, time of payment, required records, and issuance of wage statements. With the exception of wage rates, these are the portions challenged as being "regulations" and not within the ambit of the Wage Board's power because such matters are specifically the subject matter for regulations under § 36–408 (b) and (c).

■ A careful reading of the Act, consistent with its expressed purpose, clearly reveals that Congress made a dual delegation of legislative rule-making authority. Both § 36–407(b), authorizing wage orders, and § 36–408(a), authorizing regulations, contain broad grants of power to "effectuate" or "carry out the purposes of this Act." Moreover, §§ 36–407(c) and 36–408 (a) permit both wage orders and regulations to be drafted so as to prevent circumvention or evasion of wage rates and overtime minimums. The specific expression of matter for regulations in § 36–408 (b) and (c) cannot be taken as an indication by Congress that such cannot also be the subject of a wage order. The test is whether those provisions are necessary to "effectuate" the purposes of the Act or to "carry out the purposes of [a wage order], * * * to prevent the circumvention or evasion of it, and * * * to safeguard the minimum wage rates and overtime compensation established in [such wage order]." Indeed, when the Act was adopted, wage

orders contained such provisions. In the entire context of this minimum wage structure, we think that the Congress may fairly be taken to have intended the form of a wage order issued here.

■ The distinguishing characteristic between these sections lies in their purpose. An order is used to establish the basic minimum level of income for an "occupation and classification" (§ 36–407(c)), with additional provisions to ensure its compliance.[19] Regulations, on the other hand, are placed under no such restriction. They are used to "make certain that there is coordination between all other Government agencies, and [that] there is [no] duplication,"[20] or to secure inter-occupational uniformity if that is essential.

■ These sections read in this light are indeed harmonious and well written. We hold that the Wage Board did not exceed its authority in issuing the current wage order and that the challenged sections of the order are not "regulations".

### III

### *Findings of fact and the evidence*

The gravamen of petitioners' appeal attacks the Wage Board's findings of fact and the sufficiency of the evidence supporting those findings. They urge that because there is no administrative review of Wage Board action this court, being "the only check on the propriety of the Order", should closely examine the record to determine if the findings of fact are supported by substantial evidence. We agree that a close examination is proper.

The statute does not explicitly provide that the Wage Board shall make findings of fact and conclusions of law in support of the order. Section 36–409(a), *supra,*

19. Gemsco Inc., v. Walling, 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1954).

20. Hearings on H.R. 648 before Subcommitte No. 3 of the House Committee on the District of Columbia, 89th Cong., 1st Sess. 48 (1965).

states that "[t]he review by the court shall be limited to questions of law, and findings of fact by the Commissioners [Board] when supported by substantial evidence shall be conclusive." [21] This reference to agency findings reflects that they must be made. Findings are required to aid the reviewing court in properly exercising its prescribed function. SEC v. Chenery, 332 U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947); Braniff Airways v. CAB, 113 U.S. App.D.C. 132, 135, 306 F.2d 739, 742 (1962). *See also* footnote 24, *infra*.

■ For rule-making proceedings, both the Administrative Procedure Act [22] and the District of Columbia Administrative Procedure Act, effective October 21, 1969, [23] require that findings of fact and conclusions of law adhere to the standards applicable to the agency adjudicatory process. We apply these standards to the Wage Board's findings and conclusions in these cases. We think all interested parties are entitled to know, and this court on review must know, the basis and reasons for the Wage Board's action.

Section 36–406(e) states that the ad hoc committee in making recommendations "shall take into consideration (1) the amount of wages sufficient to provide adequate maintenance and to protect health, (2) the fair and reasonable value of the work performed, and (3) the wages paid in the District of Columbia by fair employers for work of like or comparable character." The Corporation Counsel agree in their brief on behalf of the Board that these standards apply to ultimate Wage Board action. The Wage Board also considered that these basic standards were applicable to their final action. We agree.[24] *See also* § 36–406(a).

The Wage Board made only two findings of fact. The first, relating to a general minimum weekly wage [25] of $81.28, was expressly based on a cost-of-living study (R. 376–380) reflecting that $64.93 was required for goods and services, and $16.35 for taxes. This finding was specifically related to the statutory requirement that wages be "sufficient to provide adequate maintenance and to protect

---

21. The review provided in § 36–409(a) is limited to an "order" of the Wage Board. Petitioners would have us enlarge this review to include the proceedings of the ad hoc committee leading to the proposed wage order. But our review "does not extend to a review of the evidence and hearings before the committee or an investigation of the mental processes by which [ad hoc] committee members reached their conclusion to recommend the minimum wage." Opp Cotton Mills v. Adm'r. of W. & H. Div., 312 U.S. 126, 153, 61 S.Ct. 524, 536, 85 L.Ed. 624 (1941). *See also* Andree & Seedman v. Adm'r of W. & H. Div., 74 U.S.App.D.C., 240, 243, 122 F.2d 634, 638 (1941). The committee's function was to act in a sense as a grand jury to sift government information and recommend future action. *Cf.* Bowles v. Baer, 142 F.2d 787, 789 (7th Cir. 1944). Accordingly, it is not fatal to the Wage Board's action that some on the committee thought their data base and other central information was less than ideal. In any event, as we read the lamentations of those committee members, they were, correctly so, making a record for requesting larger future appropriations. They

were not interweaving into the administrative fabric a fatal weakness to a justified new minimum wage order.

22. § 5 U.S.C. 557(c) (Supp. IV, 1968).

23. D.C.Code 1967, § 1–1509(c) (Supp. II, 1969).

24. "These overall factors must be considered, findings made on them, and a judgment reached." Andree & Seedman v. Adm'r of W. & H. Div., 74 U.S.App.D.C. 240, 242, 122 F.2d 634, 637 (1941). This case construed 29 U.S.C. § 208, which is remarkably similar to §§ 36–406 and 407. Gerstenfeld v. Jett, 126 U.S.App.D.C. 119, 374 F.2d 33 (1967), relied on by the Board to except it from the findings requirement, is distinguishable from Andree & Seedman, *supra*, because, unlike this case, a procedure was there available to seek an exception to the administrative classification and that was deemed by that court to protect the right to a hearing and, inferably, the right of judicial review.

25. *See* D.C.Code 1967, § 36–402(2) for the definition of the term "wage".

health." The second finding, unlike the first, related specifically to the retail trade occupations, and was that the minimum wage "should be not less than $2.00 an hour." [26] It was stated that this second finding was based on the three statutory considerations.

Accordingly, we have only one finding by the Wage Board which is subject to review on the petitions filed with the court. We think this is not sufficient for meaningful review of the Wage Board's action as set out in the Wage Order. We note that after making this single hourly wage rate finding the Wage Board then directed preparation of a wage order to "include among other things" eleven specified items, one of which was an hourly minimum wage for the occupation.[27] We also note that the gross weekly wage rate, based on a prescribed forty-hour work week (*see* D.C.Code 1967, § 36–403(b)) for this occupation at the $2.00 hourly rate, would be $80.00 whereas in the first finding the minimum weekly wage was determined to be $81.28. While we intimate no view as to the significance of this discrepancy, the minor difference is unexplained by the Wage Board.

According to the Wage Board, it considered many volumes of transcript, written statements, statistical documents, and the recommendations of the Ad Hoc Committee. Yet it mentioned only one item, a report dated August 1968, on hourly earnings in the retail trade occupations in the District of Columbia. We think that meaningful review of Wage Board action requires sufficiently detailed findings of fact

to enable the court to know what testimony, statements, and documents were considered relevant and persuasive to the various provisions of the wage order as each relates to the applicable statutory standards for Wage Board action. Such basic findings may then be support for the ultimate facts found. Also, to the extent that agency policy or other relevant considerations are involved, findings must be made to support those determinations.

■ To put it in slightly different terms, the decision "must include what have been * * * described as the basic facts, from which the ultimate facts in the terms of the statutory criterion are inferred." Saginaw Broadcasting Co. v. FCC, 68 App.D.C. 282, 288, 96 F.2d 554, 560 (1938). The court in *Saginaw, supra,* at 287, 96 F.2d at 559, also counseled that:

> The process necessarily includes at least four parts: (1) evidence must be taken and weighed, both as to its accuracy and credibility; (2) from attentive consideration of this evidence a [finding] of [the] facts of a basic or underlying nature must be reached; (3) from these basic facts the ultimate facts, usually in the language of the statute, are to be inferred, or not, as the case may be; (4) from this [basic] finding the decision will follow by the application of the statutory criterion.

Due to the lack of sufficient basic findings and a reasoned application of these findings to agency policy and the law,[28] we defer review of the Wage Board "findings" and, retaining jurisdiction of the

26. These findings and ensuing comments are contained on pages 559 and 560 of the administrative record in the minutes of the Wage Board meeting of May 6, 1969.

27. The other ten were: minimum wage for employees under the age of 18; for adult learners; and apprentices; and handicapped workers; a minimum daily payment; split shift payment; uniform allowance; travel expenses; allowance for meals and lodging; and any other provision necessary to carry out the purposes

of the wage order, to prevent its circumvention or evasion, and to safeguard its wage rates and overtime provision which it must contain under D.C.Code 1967, § 36–403(b) and (d).

28. Secretary of Agriculture v. United States, 347 U.S. 645, 654, 74 S.Ct. 826, 98 L.Ed. 1015 (1954); Easton Pub. Co. v. FCC, 85 U.S.App.D.C. 33, 36, 175 F.2d 344, 347 (1949); WAIT Radio v. FCC, 135 U.S.App.D.C. 317, 418 F.2d 1153, (decided June 24, 1969).

**834**

case, remand the record to the Wage Board[29] with instructions promptly to make appropriate findings of fact.

Remanded for further consideration consistent with this opinion.