**Theodore C. ROUMEL, Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent.**

**No. 79–871.**

District of Columbia Court of Appeals.

Argued March 20, 1980.

Decided June 16, 1980.

Charles R. Donnenfeld, Washington, D. C., with whom Craig N. Moore, Washington, D. C., was on the brief, for petitioner.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom Judith W. Rogers, Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before HARRIS, MACK, and FERREN, Associate Judges.

MACK, Associate Judge:

Petitioner challenges a decision by the District of Columbia Board of Zoning Adjustment (Board) denying an area variance in an R–1–B district as arbitrary and capricious. He argues that the Board's factual findings and legal conclusions are not supported by substantial evidence. Admittedly the decision of the Board is not a model of administrative adjudication. Nevertheless, after a careful review of the record, we find sufficient evidence to support the Board's opinion. We therefore affirm.

According to the Board's findings, Mr. Roumel applied for a total area and backyard variance in order to build a residence for his personal use on an undersized lot. The D.C. Zoning Regulations specify a minimum lot area of 5,000 square feet, and a backyard depth of 25 feet. D.C. Zoning Regulations §§ 3301.1, 3304.1 (1977). The lot in question has a total area of 3,776 square feet, 24.68% below the minimum. The proposed backyard would be a 68% deviation from that required by the regula-

tions. In all other respects, the proposal would conform with zoning requirements.

The particular corner property is irregularly shaped because of the nonperpendicular intersection of Garfield and Hurst Streets. Petitioner or his family have owned this property since 1942. The lot in question was created by petitioner's subdivision of a large parcel in 1955 prior to the adoption of the minimum lot area zoning regulations. Petitioner has twice before requested a variance to build a residence on this property—once in 1960, and again in 1963. Both requests were denied, first on the grounds of "undue crowding of land" and later for failing to incorporate the lot into two adjoining lots.

In denying Roumel's application, the Board made these conclusions.

The Board concludes that the size of the lot does create a practical difficulty for the owner, in that the lot is too small to permit any independent use of the site. The Board notes however that the applicant does have the option of selling the lot to the adjoining property owners, who have offered to pay fair market value for the lot to subdivide and include it as part of their present property.

Notwithstanding the conclusion as to practical difficulty, the Board concludes that the application cannot be granted. The small size of the lot, when combined with the need for lot width [sic] and rear yard variances, creates an overcrowded situation in the area. The Board concludes that the material facts relevant to this case have not changed since 1960 and 1963, when variance cases brought on the same grounds as this case were denied by the Board. The Board concludes that the granting of this application would be of substantial detriment to the public good and would impair the intent of the Zoning Regulations. As to the precedent case cited by the applicant, the Board concludes that each case must be decided on the specific set of facts presented, and that the two cases can be distinguished. The size of the lot in both cases creates a practical difficulty for the owner. How-

ever, in case No. 12466 no lot width [sic] or rear yard variances were requested, and the Board could not and did not reach the same conclusion as to overcrowding as is reached in this case.

Petitioner contends that this ruling regarding overcrowding, detriment to the public good and impairment of the intent of the zoning plan is not supported by the Board's findings nor is there substantial record evidence to warrant it.

In addition to the description of the variance, the relevant findings made by the Board were:

The grounds of [neighborhood] opposition were (a) Improvements had been made by owners of abutting property to their dwellings in reliance on the past denials of the Board (b) The proposed dwelling would interfere with the light and air of the abutting property owners (c) The proposed residence would result in the same undue crowding of the land as noted in the Board's 1960 decision (d) The variances sought are substantial. The Board concurs with the grounds stated in items "c" and "d".

\* \* \* \* \* \*

The Board further finds that even if . . . there was no potential for use of the property, the application could not be granted because of the adverse effect on adjoining property which construction of the proposed dwelling would cause.

██ Our task is to determine whether the conclusions are adequate to support the decision; whether there are factual findings upon which those conclusions rest; and whether such findings are supported by the record. D.C.Code 1978 Supp., § 1–1509(e). Our review of a Board decision is limited to assuring that these conclusions flow rationally from the findings of fact, which are in turn supported by the substantial evidence. *Stewart v. District of Columbia Board of Zoning Adjustment*, D.C.App., 305 A.2d 516 (1973). Moreover, we note at the outset that the facts and circumstances of each case are especially important for area variance determinations. *See Palmer v. Board*

*of Zoning Adjustment,* D.C.App., 287 A.2d 535 (1972).

The Board is empowered, by virtue of D.C.Code 1973, § 5–420(3), to grant an area variance where it finds three conditions: (1) the property is unique because, *inter alia,* of its size, shape or topography; (2) the owner would encounter practical difficulties if the zoning regulations were strictly applied; (3) the variance would not cause substantial detriment to the public good and would not substantially impair the intent, purpose and integrity of the zone plan. *Capitol Hill Restoration Society, Inc. v. District of Columbia Board of Zoning Adjustment,* D.C. App., 398 A.2d 13, 15 (1979). Petitioner obviously accepts that part of the Board's decision finding the property unique or the existence of a practical hardship for the owner.[1] Rather he challenges that portion of the opinion leading to the conclusions of an overcrowding situation, substantial public detriment, and impairment of the zoning plan.

■ Petitioner's concept of "overcrowding" is too limited. He asserts that such a determination is governed "solely by the *percentage* of lot area that a structure occupied." On the contrary, we think the term also refers to the density of structures located on different lots in a given area. Accordingly, in this case, the conclusion of an overcrowded situation is supported not only by the Board's reaffirmation of its 1960 decision,[2] but independently by its findings of adverse impact on adjoining property owners and the substantial size of the variance requested.

■ We think these findings are in turn adequately supported by two portions of the record. First, the documents in evidence show that the proposed house would be sandwiched between two houses, one of which is on a lot twice the size of petitioner's. The diagram of the proposal graphically demonstrates this condition. In addition, only an eight-foot buffer would separate the rear of the house from adjoining property.

Secondly, before the Board, petitioner cited another BZA case where it granted a variance for a lot of similar size. But the Board's reasons for distinguishing that case are convincing on the issue of overcrowding. The record contains diagrams of the lot and black configurations and placement of residences in both applications. In the cited case, a large backyard was subdivided. The house built on the resulting lot was not immediately adjacent to any other residence, but rather to other backyards and a garage. In the instant case, the corner lot is an extension off the side yards of two houses. The proposed dwelling would necessarily be next to each. The evidence, albeit documentary evidence, is there.

Petitioner's remaining challenges go to the factual basis for concluding that the variance would be detrimental to the public good and impact adversely the zoning plan. In particular, he contends that there is no support for finding that the proposed structure would adversely affect the adjoining property. Once again, we think petitioner's notion of this concept is unduly limited. If

1. Petitioner objects to the Board's reference to an "option" to sell the lot. The Board made a finding that adjoining lot owners had offered to purchase the lot and the applicant could receive a reasonable return for the site. However, this finding is relevant to the issue of practical difficulty caused by the zoning regulations, on which the Board found in petitioner's favor.

2. In 1960, petitioner applied for variances to build three structures on three contiguous lots (including the instant lot). The applications were denied because of "undue crowding." Roumel realigned two of the lots to conform to the zoning requirements. Houses were built

and the lots sold, leaving the present lot unchanged. Roumel returned to the Board in 1963 for a variance, this time for the remaining lot. The Board denied the request based on the fact that he had not incorporated this lot as part of the two buildable lots. The regulations at the time authorized variances only where the petitioner did not own adjoining property. *See* D.C. Zoning Regulations § 3301.3. At the time of his 1960 application, Roumel did own adjoining property, precluding eligibility for a variance for this lot. The 1963 decision citing these "equities," held he was bound by the 1960 decision. Neither Board action was appealed.

we assume that the Board rejected the adjoining property owners' contentions that (1) they had made improvements to their property in reliance on the past denials and (2) the proposed dwelling would interfere with their light and air, this does not lead to the conclusion that no other basis for the finding existed. Indeed, the diagram of the proposal submitted by petitioner supports a finding of adverse impact. Although petitioner's plan meets the minimum requirement of an eight-foot side yard, the adjoining house on Hurst Street, for unspecified reasons, is located only five or six feet from the property line. Thus only thirteen to fourteen feet would separate the two structures. In addition, the sides of the two dwellings would be almost exactly aligned. Finally, the Hurst Street adjoining lot is approximately 8400 square feet, more than twice the size of petitioner's lot. Yet, if the variance were granted, that owner would find a house only thirteen feet away from his. We do not know the reasons for the location of the house in this matter, but it is a *fait accompli*. Its location supports the Board's finding of adverse impact on adjoining property.

Likewise, the very size of the variances requested there, designated in the Board's findings as "substantial," reenforces the conclusion of detriment to the public good and impact on the zoning plan—24.68% below the minimum area, and 68% below the minimum backyard allowances. The record contains evidence describing the other lots in the neighborhood. On the same block, only one other substandard lot exists, and that one, at 4871 square feet, is only marginally below the minimum requirement. The average size of the lots in that block is significantly above the minimum—approximately 7400 square feet. Substandard lots are not a common feature of the neighborhood. "It is well established that a variance may not be granted, even to alleviate a bona fide serious hardship to the owner, if the granting thereof would adversely affect the surrounding neighborhood." *Clerics of St. Viator, Inc. v. District of Columbia Board of Zoning Adjustment*, D.C.App., 320 A.2d 291, 294–95 (1974) *citing* 2 Anderson, American Law of Zoning § 14.40 (1968).

Given the circumstances of this case, the findings of fact and evidence of record adequately support the Board's ultimate conclusion that the variance would have a detrimental impact on the public good and impair the zoning plan.[3] Accordingly we

*Affirm.*

---

3. Petitioner contends that the Board's apparent reliance on the need for a lot *width* variance in its conclusions, since it is unsupported by the evidence, requires reversal. This is obviously a Board error. The Board clearly in its findings of fact characterized the application as one for lot area and backyard variance only. We think the Board's references to a lot width variance are unnecessary to uphold its decision.