NATIONAL BLACK CHILD DEVELOP-MENT INSTITUTE, INC., Petitioner,

v.

DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent.

No. 83–1434.

District of Columbia Court of Appeals.

Argued Oct. 2, 1984.

Decided Nov. 8, 1984.

---

Louis R. Moffa, Jr., Washington, D.C., for petitioner.

Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., with whom John H. Suda, Principal Deputy Corp. Counsel, and Charlotte Brookins-Pruitt, Asst. Corp. Counsel, Washington, D.C., were on brief, for respondent.

Before PRYOR, Chief Judge, NEBEKER, Associate Judge, and PAIR, Associate Judge, Retired.

NEBEKER, Associate Judge:

Petitioner National Black Child Development Institute, Inc. (NBCDI) appeals the action of the Board of Zoning Adjustment (BZA) in granting a use variance imposing three restrictive conditions. Petitioner, a nonprofit corporation,[1] sought a variance to permit its property, located in an R-5-D residential zone, to be used as office space. After holding a public hearing on the NBCDI's application, the BZA voted on March 2, 1983, to grant a use variance, but imposed the following restrictive conditions:

(1) The use of the subject premises shall be limited to the National Black Child Development Institute, Inc.

---

**1.** NBCDI is incorporated under the laws of California. It has its national headquarters in the District of Columbia, where it is authorized to operate under a Certificate of Authority granted by the Office of the Recorder of Deeds. NBCDI is tax exempt under § 501(c)(3) of the Internal Revenue Code of 1954, as amended; it is not a private foundation within the meaning of § 509(a) of the Code.

(2) The number of employees shall not exceed a maximum of twelve.

(3) At such time as the applicant may offer the property for sale, it shall be advertised and sold for use only for the purpose permitted in the zone district applicable to the property.

By motion the NBCDI sought reconsideration or rehearing by the BZA, contending that the conditions imposed were illegal and unsupported by evidence in the record.

On December 1, 1983, the BZA issued a final order denying the NBCDI's motion. Appeal to this court followed.[2] We specify the scope of the relief in this case by leaving intact the grant of the variance. *See* D.C.Code § 1–1510 (1981). We hold, however, that because no valid public policy is served by confining a variance to an individual entity, any personal condition imposed by the BZA to restrict a use variance is unlawful *per se*. We remand the case to the BZA for rehearing (1) to determine whether it has authority to impose generic restrictions on petitioner's use variance; (2) to hear testimony from petitioner regarding the impact on it of any such conditions; and (3) to set forth in the record any evidence supporting such conditions.

In 1976, the NBCDI purchased its property at 1463 Rhode Island Avenue, N.W. The area was then, as now, zoned for residential use. The site is a fairly level trapezoid-shaped lot of approximately 1,850 square feet. It is improved with a brick townhouse having three stories and a basement. The NBCDI purchased the property to obtain office space in the District of Columbia. It had initially conditioned its purchase of the property on the seller's obtaining a variance to permit use as office space. The seller's attorney, however, pointed out that under zoning regulations as they then existed, the NBCDI qualified as a social service center; so long as it was operating under a grant from either the District of Columbia or federal government, it could obtain a certificate of occupancy immediately, as of right, without a hearing.

Having such a grant, the NBCDI purchased the property and made improvements. It applied for, and received, two successive temporary certificates of occupancy, their dates coinciding with those of grants the NBCDI held. In 1978, after its most recent certificate had expired,[3] but before the Zoning Administrator's Office had acted upon its application for a new certificate, emergency amendments to the zoning regulations went into effect. The emergency amendments eliminated the provision that had permitted social service centers under District or federal contract to operate offices as of right in an R-5-D district.[4]

The present application for a variance was filed on September 24, 1982, and granted with the restrictive conditions listed above. While acknowledging the authority of the BZA to grant a variance, the NBCDI argues that conditions (1) and (3) are unlawful because they regulate the property owner personally, and that condition (2) is not based upon substantial evidence in the record. We agree.

## I

### Authority of the BZA to Grant the Variance

■ The NBCDI sought its variance under § 8207.11 of the District of Columbia

---

**2.** D.C.Code § 11–722 (1981) confers jurisdiction upon this court to review final actions of the BZA.

**3.** The certificate of occupancy was issued on April 4, 1978, but bore an expiration date of July 31, 1977. Since NBCDI had no valid certificate at the time the amendments went into effect, it could not qualify as a non-conforming user.

**4.** The newer regulations permitted only "community based residential facilities" to operate as of right in R-5-D districts. NBCDI used its property only for offices and meeting facilities, and had no residents. (Record at 7, 110).

Zoning Regulations.[5] Section 8207.11 authorizes the BZA to grant a use variance based on three criteria: (1) unique physical aspect or "other extraordinary or exceptional situation or condition of a specific piece of property," (2) undue hardship, and (3) no harm to the public or the zone plan. *Monaco v. District of Columbia Board of Zoning Adjustment*, 407 A.2d 1091, 1096 (D.C.1979). The burden is on the applicant to meet all three criteria, *id.* at 1101, and the hardship element must not be the result of actions undertaken by the landowner in knowing violation of zoning regulations. *Clerics of St. Viator, Inc. v. District of Columbia Board of Zoning Adjustment*, 320 A.2d 291, 294 (D.C.1974) (drop in number of young men entering the priesthood, making maintenance of large seminary a hardship, not "self-imposed"); *see also and compare Clouser v. David*, 114 U.S.App.D.C. 12, 13, 309 F.2d 233, 234 (1962), *cert. denied*, 372 U.S. 929, 83 S.Ct. 874, 9 L.Ed.2d 733 (1963) (hardship was self-imposed where nonconforming use was created in direct, knowing violation of the zoning provisions; and the cost of creating it could not then serve as reason for the variance).

Initially, this court read the first two criteria to require that the hardship justifying a use variance must arise from the nature of the land itself. *Palmer v. Board of Zoning Adjustment*, 287 A.2d 535, 539, 542 (D.C.1972). Subsequent decisions, however, modified *Palmer*, permitting the BZA to weigh more fully the equities in an individual case. *DeAzcarate v. District of Columbia Board of Zoning Adjustment*, 388 A.2d 1233, 1237 (D.C.1978); *Clerics of St. Viator, Inc., supra*, 320 A.2d at 294 (factors extraneous to land may be considered in determining existence of hardship).[6] Finally, in *Monaco*, we permitted the BZA to apply a more flexible standard for determining hardship when a "public service," or nonprofit entity, is the applicant. *Monaco, supra*, 407 A.2d at 1099.

In applying the *Monaco* three-part test to grant a variance to the NBCDI, the BZA did not exceed its authority. The Board found that there existed (1) "other extraordinary or exceptional situation" and (2) undue hardship. *See Monaco, supra*, 407 A.2d at 1096. The BZA found that the NBCDI's work benefited black children and families within the District, that the Institute had received temporary certificates of occupancy under regulations that had been altered by the 1978 amendments to preclude the NBCDI's qualifying for future certificates under them, and that the great expense of operating offices at another site would cause serious detriment to the Institute.[7] It held that the NBCDI's situation is unique, that its work does promote the public welfare, and that denial of the variance would cause undue hardship.

However, to insure that its grant of the variance met the third part of the *Monaco* test, no harm to the public or zone plan, the BZA imposed the three restrictive conditions at issue here. In determining whether imposition of such conditions lies within

---

5. Section 8207.11, adopted pursuant to D.C.Code § 5–424(g)(3) (1981), provides:
 Where, by reason of exceptional narrowness, shallowness or shape of a specific piece of property at the time of the original adoption of the regulations or by reason of exceptional topographical conditions or other extraordinary or exceptional situation or condition of a specific piece of property, the strict application of any regulation adopted under this Act would result in peculiar and exceptional practical difficulties to or exceptional and undue hardship upon the owner of such property, [BZA may] authorize, upon an appeal relating to such property, a variance for such strict application so as to relieve such difficulties or hardship, provided such relief can be granted without substantially impairing the intent, purpose, and integrity of the zone plan as embodied in the zoning regulations and map.

6. The focus in these cases was on the "other extraordinary or exceptional situation" language of § 8207.11.

7. NBCDI pays $11,400 annually on its first trust on its property. The Institute has approximately 3,000 square feet of office space. NBCDI would require the same amount of space in another building. Annual rental costs would range from $54,000 (at $18.00 per square foot) to $72,000 (at $24.00 per square foot). (Record at 200.)

the BZA's authority, we confront a new question of law within this jurisdiction.

## II

### Authority of the BZA to Impose Conditions Upon Grant of Variance

In imposing restrictive conditions, the Board draws upon its general mandate to insure that a proposed variance would have no detrimental effect on the neighborhood or zone plan.[8] *See, e.g., Monaco, supra,* 407 A.2d at 1101. We do not hold that the Board may never impose conditions in granting a variance. The record as it stands is inadequate to permit a determination regarding conditions in general. We hold only that the conditions imposed by the BZA in this instance are unlawful. On remand of the case, the BZA should more fully set forth the source of its authority to impose conditions and the specific findings supporting any such conditions.

### A. Conditions Personal to the NBCDI

The first and third conditions imposed by the BZA, however, limit the use variance to the NBCDI and provide for termination of the variance upon transfer of title. The BZA argues that the limitations are necessary to preserve the integrity of the zoning plan. Authorities generally disfavor personal conditions; rather, conditions, like the variance itself, must run with the land. *Dexter v. Town Board of Town of Gates,* 36 N.Y.2d 102, 104, 365 N.Y.S.2d 506, 508, 324 N.E.2d 870, 871 (1975); *Vlahos Realty Co. v. Little Boar's Head District,* 146 A.2d 257, 260 (N.H. 1958); *see also* 3 R.M. ANDERSON, AMERICAN LAW OF ZONING 2D § 18.69 (1977); 6 P.J. ROHAN, ZONING AND LAND USE CONTROL § 43.03[2] (1984). We adopt this position. Personal conditions impermissibly regulate the business conduct of the owner, rather than the use of his property, and are unlawful *per se.*[9] We reserve judgment, however, regarding generic conditions, such as might limit the variance granted here and its transfer to "the NBCDI or any similarly situated nonprofit organization." The conditions would thus be structured to run

8. The BZA attempts to distinguish the circumstances here from those in *Monaco.* In *Monaco,* the Republican National Committee (RNC) had received assurances from zoning authorities that their townhouse properties on Capitol Hill could be used as offices. The RNC had acted in reliance on those assurances and was, eventually, granted its variance under the three-part test, which this court held could be applied with greater flexibility to nonprofit, service entities. *Monaco, supra,* 407 A.2d at 1099, 1101.

Here, the BZA urges, applicant never received any guarantees from zoning authorities that a permanent certificate of occupancy would be granted. Furthermore, the NBCDI proceeded inappropriately, in the BZA's view, by failing to appeal the December 7, 1982, denial of their application for a permanent certificate of occupancy by the Office of Planning and Development (OPD). OPD had denied the application on the grounds that the NBCDI did not qualify as a social service center under the amended regulations. (Record at 201.) The distinctions the BZA draws are not dispositive. As the BZA points out in its findings, the use the NBCDI made of its property has not changed in scope or character since 1976 when it purchased the property and received a temporary certificate of occupancy under the current zoning regulations.

The 1978 changes in zoning, however, permitted only residential facilities to qualify as social service centers. The NBCDI could reasonably conclude that appeal of OPD's denial was futile because the NBCDI's property was not a residential facility. The NBCDI acted, not in reliance on assurances of zoning authorities, but on the regulations as they existed at the time it initially purchased and renovated its property to meet its needs and the District's health and safety standards. The situation is, therefore, not materially different from that in *Monaco* in that the circumstances suggest good faith, reasonable efforts to comply. *Compare Clouser v. David, supra.*

9. In its brief and at oral argument, the NBCDI pointed out that the restrictive conditions imposed by the BZA would cause it to lose its variance if it were, for example, to reincorporate, even while retaining a substantially identical purpose and mode of operation. Furthermore, its property is its most important source of internal funding. Its ability to use its property to raise operating funds via loans is severely curtailed by the first and third conditions. The BZA did not permit the NBCDI to present evidence regarding impact of the conditions. It denied rehearing after imposing these conditions and the conditions were not addressed in the earlier proceedings.

with the land, requiring any future occupant to show that it fits within the genre. On remand, should the BZA decide to impose such generic conditions, it must hear evidence from the NBCDI regarding the impact upon it of those conditions and must weigh that evidence in making its determination. *See Monaco, supra,* 407 A.2d at 1101; *accord Allentuck v. District of Columbia Minimum Wage and Industrial Safety Board,* 261 A.2d 826, 832–33 (D.C. 1969) (record must reveal sufficient basic findings and a reasoned application of these findings to agency policy and the law).

### B. *Conditions Limiting Number of Employees*

 The second condition limits the NBCDI to twelve employees. This condition does regulate use of the property, and is therefore not unlawful *per se.* It is, however, unsupported by evidence in the record, and instead is based only on a finding that the NBCDI had twelve employees at the time it applied for its variance. (Record at 196.) The BZA heard no evidence from the NBCDI regarding its present or future needs for staff, nor did it relate the conditions to specific findings regarding traffic, parking, or availability of public transportation. If the BZA imposes a condition limiting the number of employees at the site, it must base its findings on reliable, probative, and substantial evidence in the record as a whole. *Monaco, supra,* 407 A.2d at 1101; *Allentuck, supra,* 261 A.2d at 833.

*The case is remanded for proceedings in accordance with this opinion.*