**Robert P. WILLIAMS, et al.,**
**Petitioners,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent.**

**No. 86–1455.**

District of Columbia Court of Appeals.

Argued Nov. 5, 1987.
Decided Jan. 25, 1988.

Henry T. Keegan, for petitioners.

Charles L. Reischel, Deputy Corp. Counsel, with whom Frederick D. Cooke, Jr., Acting Corp. Counsel at the time the briefs were filed, and Karen S. Dworkin, Asst. Corp. Counsel, were on the brief, for respondent.

Before FERREN and BELSON, Associate Judges, and GALLAGHER, Senior Judge.

BELSON, Associate Judge:

Petitioners seek review of a final order of the District of Columbia Board of Zoning Adjustment granting a request by Hope Village for two special exceptions and a variance. Because we conclude that the Board's findings are supported by substantial evidence, we affirm.

Hope Village operates six buildings located on one city street within the same city square. The special exceptions and variance sought would cover three of those buildings. All six buildings are located within an R–5–A low density general residence district and classified as community-based residential facilities ("CBRFs"). CBRFs are facilities "for persons who have a common need for treatment, rehabilitation, assistance, or supervision in their daily living." 11 DCMR § 199.9 (1987). Any CBRF must be classified as falling within one of seven subcategories: (a) adult rehabilitation home; (b) community residence facility; (c) emergency shelter; (d) health care facility; (e) substance abusers' home; (f) youth rehabilitation home; (g) youth residential care home. *Id.* The three buildings at issue currently are classified as community residence facilities, and respondent seeks to have these buildings classified as substance abusers' homes and adult rehabilitation homes.[1] Petitioners, property owners and/or residents of the neighborhood immediately surrounding respondent's property, oppose the proposed change.

Hope Village seeks the special exceptions and variance because it was awarded a contract with the District of Columbia government under which the three buildings in question would be used to house persons in the custody of the D.C. Department of Corrections and having six months or less remaining of confinement. However, because the three buildings are now classified as community residence facilities, by definition they may not "provid[e] sheltered living arrangements to persons who are in the custody of the Department of Corrections of the District of Columbia." 22 DCMR § 3099.1 (1986). If classified as substance abusers' homes or adult rehabilitation homes, the buildings could be used to house persons in the custody of the Department of Corrections.[2]

When this Court reviews a decision by the Board of Zoning Adjustment, our task is limited to assuring that the Board's conclusions flow rationally from findings of fact, and that those findings of fact are supported by substantial evidence. D.C. Code § 1–1509(e) (1987); *Foxhall Community Citizens Ass'n v. District of Columbia Bd. of Zoning Adjustment,* 524 A.2d 759, 761 (D.C.1987); *Roumel v. District of*

---

1. A community residence facility, unlike an adult rehabilitation home or a substance abusers home, may be established as a matter of right in an R–5 district. 11 DCMR § 350.4(f) (1987). The special exceptions in the instant case were sought pursuant to 11 DCMR § 3108.1 (1987). Under the first special exception sought, three buildings in question would be reclassified from community residence facilities to adult rehabilitation homes and substance abusers' homes, in accordance with 11 DCMR § 357.1. Under the second special exception requested, these facilities would be permitted in the same square as other community-based residential facilities, pursuant to 11 DCMR § 358.7. Under the variance, sought pursuant to 11 DCMR § 3107.2 (1987), each of the three buildings would be permitted to house more than twenty persons, the current limit under § 357.1.

2. Respondent notes in its brief that the District of Columbia needs the three buildings as part of its effort to eliminate overcrowding at its correctional facilities, and to comply with a court order to deinstitutionalize those in its custody. We have previously recognized that important public interest concerns, as well as potential hardship to the public, are properly considered as factors in BZA determinations of variance relief. *National Black Child Development Institute, Inc. v. District of Columbia Board of Zoning Adjustment,* 483 A.2d 687, 690 (D.C.1984) (fact that petitioner's "work does promote the public welfare," considered along with whether variance would result in any "harm to the public ..."); *Monaco v. District of Columbia Board of Zoning Adjustment,* 407 A.2d 1091, 1098 (D.C. 1979) (approving public need for use as important factor in granting or denying variance). As part of this analysis, the BZA may also consider potential hardship to the public if the variance is not granted. *See, e.g., Consolidated Edison Co. of New York v. Hoffman,* 43 N.Y.2d 598, 609, 374 N.E.2d 105, 110, 403 N.Y.S.2d 193, 198 (1978) (application for variance considered "[i]n view of the potential hardship to [respondent's] approximately three million customers, and millions of others affected ...").

*Columbia Bd. of Zoning Adjustment,* 417 A.2d 405, 407 (D.C.1980); *Stewart v. District of Columbia Bd. of Zoning Adjustment,* 305 A.2d 516, 518 (D.C.1973). We are persuaded by our review of the record that substantial evidence exists to support the Board's findings of fact, and that the Board's decision to grant the special exceptions and variance flows rationally from those findings.

The three buildings in question have been operating as CBRFs since 1975, providing group housing for mental patients needing daily supervision. Substantial evidence exists to support the Board's finding that approval of the two special exceptions and variance would have little impact on the community, and that the changes would not alter the current land use pattern in any appreciable way. Nor does it appear that the change would affect adversely the use of neighboring property; indeed, the record indicates that replacement of mental patients currently housed in the three buildings with pre-releasees from the Department of Corrections will give Hope Village greater control over the general movement and activity of its residents. The proposed zoning changes have been considered and approved by the D.C. Office of

Planning, the Traffic Division of the Department of Public Works, the Alcohol and Drug Abuse Services Administration, and the Fire Department.[3] Further, the Board granted its approval subject to certain conditions, including Hope Village's scrupulous adherence to a written security plan and a program to involve the community in the operations of the facilities. Finally, we note that the three Hope Village buildings that are not the subject of this appeal already are used to house persons in the custody of the Federal Bureau of Prisons, a use quite similar to that contemplated under the special exceptions and variance at issue in this case.

Accordingly, the final order of the Board of Zoning Adjustment, granting Hope Village's requested special exceptions and variance, is hereby

*Affirmed.*

---

**3.** Although the matter was not raised in petitioner's brief, respondent noted during oral argument that the Board accepted into the record certain evidence, including letters from community residents and a report from the Metropolitan Police Department ("MPD"), that it received post-hearing. This Court has held that "[n]ew evidence submitted post-hearing may not be admitted into the record and, therefore, may not provide a basis upon which an agency may issue a decision." *Harris v. District of Columbia Rental Housing Comm'n,* 505 A.2d 66, 69 (D.C.1986). We have also held that where an agency deviates from this course, it must notify the parties to an administrative hearing that new evidence is being officially noticed in order to give the parties sufficient opportunity to make an appropriate challenge or response. *Carey v. District Unemployment Compensation Bd.,* 304 A.2d 18, 20 (D.C.1973). In the instant case, the Board had not received a report from the police department at the time of the hearing, and therefore determined on the public record, and without objection, that (1) the police report should be received by June 18, 1986, (2) copies of the report would then be served on all parties to the application, and (3) those parties would have until June 25, 1986, to respond. MPD filed two reports with the Board of Zoning Adjustment, and those reports were mailed to the parties, none of whom availed themselves of the opportunity to take issue with the MPD submissions. Given petitioners' opportunity to respond, and the fact that the Board did not expressly rely on the police reports, we conclude that, to the extent there is any error on the record before us, such error was harmless.