499 A.2d 1193 (1985)
Edward F. GERBER, et al., Petitioners,
v.
DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE CONTROL BOARD, Respondent,
Tenley Corporation, t/a Tenley Mini Market, Intervenor.
No. 84-1506.
District of Columbia Court of Appeals.
Argued May 17, 1985.
Decided October 31, 1985.
*1194 Charles R. Braun, Washington, D.C., with whom Eric J. Branfman, Washington, D.C., was on the brief, for petitioners.
William J. Earl, Asst. Corp. Counsel, Washington, D.C., with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.
Dimitri P. Mallios, Washington, D.C., for intervenor.
Before MACK and FERREN, Associate Judges, and GALLAGHER, Senior Judge.
MACK, Associate Judge:
Petitioners appeal the grant of a Class B retail liquor license[1] to the Tenley Corporation, t/a the Tenley Mini Market, for use in a convenience store located at 4326 Wisconsin Avenue N.W. Findings of fact and conclusions of law in this matter were issued by the District of Columbia Alcoholic Beverage Control Board ("Board") in a decision dated October 25, 1984. Several grounds for appeal are alleged. Petitioners' first objection is that the application of a prior owner at the same 4326 Wisconsin Avenue location for a Class B license was previously denied by the Board in a decision dated August 11, 1982. Petitioners assert that no new circumstances have been identified by the Board that would justify its change of position, and that in fact similar and perhaps even stronger evidence of neighborhood opposition to the grant of a license for this location was presented to the Board during the hearing on Tenley Corporation's application, but was rejected without explanation.
The second ground for appeal is that in support of the application Tenley Corporation improperly submitted a petition containing signatures of nonresidents of the "neighborhood" of the Tenley store, as that "neighborhood" is defined by the Board's regulations. Petitioners allege that 90% of the signatures on the petition were those of nonresidents, and should not have been considered by the Board. Petitioners also complain that the Board failed to give the recommendations of two Advisory Neighborhood Commissions (ANCs) the "great weight" they are entitled by statute, and that in addition it improperly considered an ex parte communication received from the attorney for Tenley Corporation and failed to notify petitioners of this communication in order to give them an opportunity to respond.
After considering the entire record we find no reversible error. Finding substantial evidence to support the Board's decision, we affirm.

*1195 I.
The Alcoholic Beverage Control Act requires a license applicant to meet certain fitness standards before the Board may issue him a license. The applicant must be a United States citizen, D.C.Code § 25-115(a)(3)(A) (1984 Supp.); he must be the actual owner of the business and must intend to operate the business for himself and not as an agent, id. § 25-115(a)(4); he must be at least 21 years old, § 25-115(a)(2); he must not have been convicted of a felony in the ten years previous to the application, nor of certain misdemeanors in the previous five years, id.; and finally, he must be "of good moral character and generally fit for the trust to be in him reposed." § 25-115(a)(1).
In addition, the Board may not issue the license without first satisfying itself that
the place for which the license is to be issued is an appropriate one considering the character of the premises, its surroundings, and the wishes of the persons residing or owning property in the neighborhood of the premises for which the license is desired.
D.C.Code § 25-115(a)(6) (1984 Supp.).
Petitioners do not take issue with the Board's findings that the applicant met all of the fitness requirements set forth in section 25-115(a)(1)-(4). They argue instead that a prior applicant for a Class B license at the same 4326 Wisconsin Avenue location also met all of the fitness requirements, and yet the Board denied the prior applicant a license. Petitioners assert that since the license is sought by Tenley Corporation for the identical location, the "character of the neighborhood and its surroundings" have necessarily remained the same under section 25-115(a)(6), and that the opposition to the present application by "persons residing or owning property in the neighborhood of the premises for which the license is desired" was, if anything, stronger than the opposition to the prior application. Petitioners conclude that the Board's grant of the license to the Tenley Corporation, in the face of its previous denial of a license to an applicant with similar qualifications in the same location, is arbitrary and capricious and an abuse of discretion, see D.C.Code § 1-1510(a)(3)(A) (1981).
There is no question, however, that the character of the applicant and of the premises for which the license is sought will necessarily differ from one application to the next, and the Board must necessarily evaluate each applicant individually, on a case-by-case basis. We have previously held that the fact that the Board has acted in opposite ways on two license applications for premises that are adjacent to one another is not arbitrary, when the "qualifications of the applicants and the character of the [establishments for which the license is requested] are different." Sophia's Inc. v. Alcoholic Beverage Control Board of the District of Columbia, 268 A.2d 799, 801 (D.C.1970). Petitioners' argument that the Board was arbitrary in denying one application and then in granting a similar one two years later turns on the assumption that the prior applicant and the Tenley Corporation were equally fit to be awarded a Class B license. Although it is true that the Board found that each applicant had satisfied the criteria listed in section 25-115(a)(1)-(4), supra, these personal qualifications are in the nature of minimum requirements for a license, and cannot be construed to be exclusive. The owner and operator of the Tenley Mini Market, John Mathisen, was a police officer with the Maryland State Police Department for eleven years prior to opening the convenience store at the Wisconsin Avenue location. In its findings, the Board noted with approval that Mathisen had testified that he was fully familiar with the District's laws relating to the sale of alcoholic beverages, the hours that they may be sold and the age limitations for purchasers. Finding 21(d). The Board acted within its discretion in finding Mathisen more than qualified to receive a Class B license.
Furthermore, in its first set of Findings, the Board held the prior applicant  who was co-located with a gasoline station  unqualified to receive a license, in part, because *1196 that applicant "ha[d] not indicated that [he] would take any special precautions to prevent the sale of alcoholic beverages to underage school children. It can reasonably be expected that those children will be exposed to the use and abuse of alcohol." In the present application, in contrast, the Board emphasized the special qualifications of the applicant over and above the minimum, especially his police experience. The Board stressed that due to Mathisen's experience and the nature of his store  which the Board found is a well-run, quality convenience store, Finding 21(a)  children would be much less likely to be exposed to the use and abuse of alcohol. Mathisen's prior experience and its reflection in the quality of his store's operation was relevant information in the determination of whether the "character of the premises" is an appropriate one for the receipt of a liquor license under section 25-115(a)(6), supra. The Board's findings on this score accurately reflect the uncontested testimony adduced at the hearing as to the nature of the applicant's qualifications and business.
Our review of the Board's decision is limited by the District of Columbia Administrative Procedure Act, see D.C.Code § 1-1510(a) (1981). We may reverse the Board's decision if it is "[u]nsupported by substantial evidence in the record," § 1-1510(a)(3)(E), or if it is "[a]rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," § 1-1510(a)(3)(A).
We find the decision to be supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," i.e., "more than mere scintilla." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). In addition to the requisite quantum of evidence, the agency's conclusions must be derived rationally from findings that are in accord with the underlying statute. Spevak v. District of Columbia Alcoholic Beverage Control Board, 407 A.2d 549, 553 (D.C.1979). The mere existence of evidence contrary to the Board's findings does not allow this court to substitute its judgment for that of the Board. Id. at 554. Viewed through the "substantial evidence" lens, the uncontested evidence of the applicant's fitness and of the character of the premises, together with the substantial neighborhood support for the license as demonstrated through the applicant's petition, see infra Part II, require us to uphold the Board's decision.
In addition, given the fact that the character of the applicants and the nature of the premises differed substantially, and these differences are reflected in the Board's two sets of Findings, we need not reach the question of whether the Board, when it finds two successive applicants substantially the same and equally fit, has some independent duty to justify a difference in outcome in its license decisions. In this case, the Board's grant of a license to Tenley Corporation, after weighing Mathisen's qualifications and the character of the convenience store, "is an informed judgment on matters within [the Board's] special competence and [is] therefore entitled to great deference by this court." Sophia's Inc., supra 268 A.2d at 801. We find no abuse of discretion in the grant of the license to Tenley Corporation justifying reversal under D.C.Code § 1-1510(a)(3)(A).

II.
Petitioners next contend that the Board improperly considered a petition filed by the applicant containing 900 signatures in support of the application, of which only approximately 10% were residents of property within a radius of 600 feet of the boundary lines of the lot on which the Tenley Mini Market is located. Petitioners maintain that only the residents of property within a 600-foot radius of the Tenley Mini Market may express their concerns to the Board through a petition, and that therefore the applicant's petition should not have been received into evidence.
*1197 Although the Alcoholic Beverage Control statute states that prior to issuing a license the Board must "consider . . . the wishes of the persons residing or owning property in the neighborhood of the premises for which the license is desired," D.C.Code § 25-115(a)(6), the statute does not define the parameters of this "neighborhood." In section 25-115(a), (c), which is expressly not applicable to Class B license applications like this one, the statute does provide a procedure for a majority of owners of property within a certain very limited area  a 600-foot radius of the applicant's premises  to in effect veto a license application. The Board's regulations define the "neighborhood" of section 25-115(a)(6) by reference to the 60-foot radius mentioned in section 25-115(c), see 23 DCMR § 1009 (1984), even though from the face of the statute there appears to be no necessary connection between the two. Petitioners contend that the signatures on the applicant's petition by nonresidents of the 600-foot radius area rendered that petition defective.
Petitioners have confused the petition that may be filed in support of a section 25-115(c) application of a majority of property owners within the 600-foot area, see 23 DCMR §§ 1011.3-1011.5 (1984), with petitions that may be filed in order to give voice to any residents of the community who may wish to be heard on the application. The Board's regulations provide that at any license proceeding "the Board shall hear all persons residing within and without the neighborhood who desire to be heard." 23 DCMR § 1001.5 (1984). Petitioners have not identified any rational reason to exclude from the operation of this section persons desiring to be heard by way of a petition. The Board analyzed the petition it received from the applicant, and found that "about (10) percent of the signatures are from persons residing within the delineated [600-foot radius] area, and three hundred (300) odd signatures are from persons residing within six (6) blocks of the Applicant's premises." We have previously noted that the Board's procedure when it receives such mixed petitions is to receive the entire petition into evidence and to analyze it in this way, see Spevak v. District of Columbia Alcoholic Beverage Control Board, supra, 407 A.2d at 554. There is thus no merit to petitioners' contention that they were not on notice that the Board would consider signatures from without the delineated area, and we find no error in the Board's consideration of the applicant's petition.

III.
Petitioners argue that the Board also failed to give the "great weight" required by statute, see D.C.Code § 1-261(d) (1981), to the views of two Advisory Neighborhood Commissions (ANCs) that opposed the granting of the license. We have held that "great weight" means that the Board "must elaborate, with precision, its response to the ANC issues and concerns." Kopff v. District of Columbia Alcoholic Beverage Control Board, 381 A.2d 1372, 1384 (D.C.1977). The Board must make "explicit reference to each ANC issue and concern as such, as well as specific findings and conclusions with respect to each." Id. We have also held, however, that the Board meets the statutory requirement when it "addresse[s] each of the concerns raised by the ANC, by specifically discussing each concern, by citing evidence and other findings in a reasonable manner, and by explaining why it rejected the ANC's recommendation." Spevak v. District of Columbia Alcoholic Beverage Control Board, supra, 407 A.2d at 555.
Here, the Board first stated that it "is cognizant of its duty to give great weight to the wishes and concerns of the ANC's and has done so." Finding 19. The Board then went on to list each of six ANC concerns, addressing each separately and making the "specific findings and conclusions with respect to each" required in Spevak, supra. As in Spevak, petitioners' "complaint, in essence, is that the Board did not follow the ANC's advice. The statute *1198 makes no such mandate. What it does require is that great weight be given to, and a reasoned and specific discussion be addressed to, the issues raised." Id. The Board has done so here, and we therefore find that the Board gave the required weight to the ANCs' concerns.

IV.
Following the hearing on this application, in a letter to the Board that petitioners allege was not served upon them  accompanying proposed findings that petitioners admit they received  applicant's counsel stated the following:
I would like to point out to the Board (I do not feel that this can be put into the Findings) that the opposition is relatively minor in this matter when compared to that of Windsor McKay's and Patton's by these same citizens groups.
Windsor McKay's and Patton's were two Class C licensees (restaurant/bars) in the Tenleytown neighborhood. Petitioners point out, correctly, that the Board's regulations prohibit ex parte contacts, 23 DCMR § 1026 (1984), and set out specific procedures for service of papers on opposing parties, id. § 1004. Petitioners assert that had they been served with a copy of this letter, they would have notified the Board that
the strength of the neighborhood opposition in this proceeding should be measured by the fact that it was much stronger than the neighborhood opposition in the recent 1982 protest against the same type of application for a new class "B" license at the same location.
Petitioners' Reply Brief at 6. Petitioners' assertion, however, is not factually correct. Although the Board in the prior application received 50 letters in opposition to the application and a petition with 19 signatures in opposition, it received only 65 signatures in support of the application. In the application of the Tenley Corporation, in contrast, the Board received 15 letters and 145 signatures in opposition, and 90 signatures from within the 600-foot radius area and 300 signatures from within six blocks of the applicant's premises in support of the application. Petitioners have not set forth any other response they would have made to the applicant's letter. In the absence of any evidence that the ex parte contact corrupted the decision making process in any way, we hold that the receipt and consideration of the letter by the Board without a certificate of service was in error, but was harmless in these circumstances.[2]
Affirmed.
GALLAGHER, Associate Judge, Retired, dissenting:
When an administrative agency grants an application and, in so doing, reverses itself, I think it should be required to explain the categorical reversal of its prior position. It is in the public interest that this should be done. The many concerned citizens in this case are entitled to an explanation. Not only that, it is a sensible thing to do. If we do not require that this be done, it will impliedly encourage a lower standard for administrative agency decisions.
Here, the Alcoholic Beverage Control Board had previously denied a liquor application for the same premises. It may be that the Board had a good reason for now granting a license previously denied to another applicant for the same location. If so, it would be a simple matter to explain the different treatment.[1] This is a basic administrative practice and we should require it for sound appellate review. It is *1199 not for us to ferret out potential grounds for an agency decision reversing itself.
The essence of this dissent was well stated by Judge Bazelon in Citizens Association of Georgetown, Inc. v. Zoning Commission of the District of Columbia, 155 U.S.App.D.C. 233, 239, 477 F.2d 402, 408 (1973):
Two strands of doctrine apply to our review of administrative agency decisions. The first is the presumption of validity of an agency's actions. An agency such as the Zoning Commission is expected to apply its expertise in making decisions like the one before us and courts should not attempt to substitute their judgment for that of the agency to whose discretion those decisions have been committed by Congress. Second, respect for an agency's expertise does not eliminate the need for judicial review of agency actions, and inherent in that albeit limited power of review is the need for an agency to spell out its reasoning. As Justice Harlan said in the Permian Basin Area Rate Cases, 390 U.S. 747, 792, [88 S.Ct. 1344, 1373, 20 L.Ed.2d 312] (1968): "The court's responsibility is not to supplant the Commission's balance of. . . [competing] interests with one more nearly to its liking, but instead to assure itself that the Commission has given reasoned consideration to each of the pertinent factors. Judicial review of the Commission's orders will therefore function accurately and efficaciously only if the Commission indicates fully and carefully the . . . purposes for which, it has chosen to act."
The case for requiring a statement of reasons from an administrative agency is a persuasive one. Those reasons may be crucial in order for the court to know what the agency has really determined, hence what to review. Courts ought not to have to speculate as to the basis for an administrative agency's conclusions; nor can a court "assume without explanation that proper standards are implicit in every act of agency discretion." And, when faced with a complex problem, having widespread ramifications, like that before us today, a court should surely have the benefit of the agency's expertise. Finally, the articulation of reasons by an agency  for itself and for the public  does afford a safeguard against arbitrary and careless action and is apt to result in greater consistency in an agency's decisionmaking. [footnote omitted.]
I would remand the record for an appropriate statement of reasons.
NOTES
[1] A Class B liquor license

shall authorize the holder thereof to sell beer and light wines from the place therein described and to deliver the same in the barrel, keg, sealed bottle, or other closed container in which the same was received by the licensee, which said barrel, keg, sealed bottle, or other closed container shall not be opened nor the contents consumed on the premises where sold. Such license shall not authorize the licensee to sell to other licensees for resale.
D.C.Code § 25-111(a)(6) (1981).
[2] Petitioners also contend that the Board failed to comply with its regulations in its denial of petitioners' motion for a stay pending appeal. The Board denied petitioners' motion to stay immediately following receipt of the applicant's opposition to the motion, and it consequently failed to consider petitioners' timely-filed reply brief. Given our disposition of this appeal, we find any error to be harmless.
[1] This court may not perform the function of supplying the omitted reasoning or fact-finding. SEC v. Chenery Corporation, 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943).