**800 WATER STREET, INC., Petitioner,**

v.

**DISTRICT OF COLUMBIA ALCO-HOLIC BEVERAGE CONTROL BOARD, Respondent.**

**No. 09–AA–238.**

District of Columbia Court of Appeals.

Submitted March 17, 2010.

Decided April 15, 2010.

Simon M. Osnos, Falls Church, VA, was on the brief for petitioner.

Peter J. Nickles, Attorney General for the District of Columbia, and Todd S. Kim, Solicitor General, Donna M. Murasky, Deputy Solicitor General, and Richard S. Love, Senior Assistant Attorney General, were on the brief for respondent.

Before PRYOR, SCHWELB, and KING, Senior Judges.

PER CURIAM:

Petitioner 800 Water Street, Inc., challenges an order entered by the Alcoholic Beverage Control Board (the Board) revoking petitioner's license to serve alcoholic beverages. The revocation accompanied findings by the Board that petitioner had violated D.C.Code § 25–823 (2001), and D.C.Code § 25–446(e) (2001), relating to violent incidents that took place at petitioner's establishment in August 2008. Petitioner argues that the Board erred when it denied petitioner's request, while the case was pending Board review, to cancel its license pursuant to D.C.Code § 25–791(e) (2001) and thereby stave off the Board's revocation and the collateral consequences that accompanied it. We find the Board's interpretation of the statute reasonable and in accordance with the statutory framework, and therefore affirm.

## I.

Because petitioner does not here contest the Board's findings of fact with respect to the events that brought about the revocation proceedings, we summarize them only briefly. On August 23, 2008, D.C. police responded to two stabbings and a third violent assault both in and directly outside of H2O, an establishment owned and operated by petitioner in Southwest Washington. The Chief of Police ordered the establishment closed and requested from the Board a summary suspension of petitioner's Class CR retailer's license, which the Board granted. The Chief stated in the request that "there would be an additional imminent danger to the health and welfare of the public if the establishment was not closed." An investigation conducted by the Alcoholic Beverage Regulation Administration (ABRA) confirmed the three incidents of violence. The summary suspension took effect on August 27, 2008. On that date the Board scheduled a hearing for October 22, 2008, to permit petitioner to show cause why its license should not be revoked.

In a letter dated October 10, 2008, petitioner informed the Board that petitioner had "abandoned efforts to resume business under the subject license." Therefore, the letter stated, "pursuant to D.C. Official Code § 25–791(e), the subject license, which is in summary suspension status, is to be marked as 'cancelled.'" Petitioner had an obvious interest in attempting to have the Board designate its license as "cancelled" before the Board could revoke it. If the Board revoked the license, pursuant to D.C.Code § 25–821(c) (2001), petitioner likely would be barred from obtaining another license for a period of five years. Presumably this outcome could be

avoided. The Board sought and obtained an opinion letter from the Office of the Attorney General (OAG) for the District of Columbia on this issue. Based, in part, on the legal guidance provided in the opinion letter and partly on arguments by the parties at an October 22 hearing, the Board rejected petitioner's statutory interpretation. The order, dated March 4, 2009, concluded, "the Board cannot be required to acquiesce in [petitioner's] request to cancel a license while that license is the subject of a pending enforcement action." It ordered petitioner's license revoked based on an ultimate conclusion that "the continued operation of [petitioner's] establishment presents an imminent danger to the health and safety of the public."

## II.

Petitioner argues the Board's order should be vacated because "(a) the Board was without authority to revoke the license once the petitioner abandoned its business operation and so notified the Board ... and (b) petitioner has a due process right to apply for future liquor licenses, which the revocation prevents."

We are deferential to an agency's findings of fact unless they are not supported by substantial evidence in the record. *Levelle, Inc. v. District of Columbia Alcoholic Beverage Control Bd.*, 924 A.2d 1030, 1035 (D.C.2007). We accord considerable deference to the Board's interpretation of statutes it is charged with administering, and we will "uphold the Board's interpretation of Title 25 and legislative enactments affecting it as long as the interpretation is reasonable and not plainly wrong or inconsistent with the legislative purpose." *Holzsager v. District of Columbia Alcoholic Beverage Control Bd.*, 979 A.2d 52, 58 (D.C.2009) (internal citations and quotation marks omitted). The judiciary, however, remains "the final authori-

ty on issues of statutory construction." *Levelle*, 924 A.2d at 1036.

The statute under review provides, in part, "If a licensee notifies the Board that the licensee has ceased to do business under the license or if the Board cancels the license under this section, the license shall be marked as 'canceled.' " D.C.Code § 25–791(e) (2001). Petitioner argues that the statute is clear on its face, and "The Board has no discretionary authority to refuse cancellation of a license and a licensee has the absolute right to surrender a license for cancellation regardless of any pending license suspension or revocation proceedings." We begin our process of statutory interpretation by looking at the statute on its face. *BSA 77 P Street LLC v. Hawkins*, 983 A.2d 988, 995 (D.C.2009). If the meaning is clear from the face of the statute, we must give effect to that plain meaning. *Id.* If the analysis ended there, the argument could be deemed persuasive. However, statutory language cannot be read in a vacuum. *See Odeniran v. Hanley Wood, LLC*, 985 A.2d 421, 428 (D.C. 2009) (interpreting unemployment compensation statute); *Mayberry v. Dukes*, 742 A.2d 448, 450 (D.C.1999) (interpreting Police and Firefighters Retirement and Disability Act). "[I]ndividual words of a statute are to be read in the light of the statute taken as a whole, and where possible, courts should avoid constructions at variance with the policy of the legislation as a whole." *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163, 171 (D.C. 2008) (internal citations and quotation marks omitted).

When read as a whole, Title 25 of the D.C.Code provides a comprehensive mechanism for the Board "to issue and renew liquor licenses and to monitor the compliance by licensees with local statutes and regulations pertaining to the sale of alcohol." *North Lincoln Park Neighbor-*

*hood Ass'n v. Alcoholic Beverage Control Bd.,* 666 A.2d 63, 66 (D.C.1995). "[T]he Board has a variety of statutory powers, some discretionary, some mandatory." *Id.* One of these powers allows the Board to suspend or revoke a license if "[t]he licensee violates any of the provisions of this title, the regulations promulgated under this title, or any other laws of the District" or if "[t]he licensee allows the licensed establishment to be used for any unlawful or disorderly purpose." D.C.Code § 25–823 (2001). Additionally, § 25–821(c) directs that "If the Board revokes a license, no license shall be issued to the same person or persons whose license is so revoked for any other location for 5 years following the revocation."

■ The Board argues, we think persuasively, that "Construing D.C.Code § 25–791(e) to require the Board to abandon a pending enforcement action whenever a licensee offers to surrender its license would abrogate its investigative authority and render inoperative its power to suspend and revoke licenses." Further, construing the statutory language in petitioner's favor would lead to the absurd result that "the attendant consequence of a license revocation—a five-year prohibition on issuing a license for any location—would be nullified at the licensee's discretion." Finally, given the statutory scheme, the Board urges that § 25–791 read as a whole, which is entitled "Temporary surrender of license—safekeeping," and which the Board argues is meant to allow a safe harbor for "a licensee whose business is temporarily discontinued because of a fire,

rebuilding, or the like" was not meant to apply to petitioner's situation. Therefore, the Board argues, we should uphold its conclusion that it cannot be required to "acquiesce" to the license cancellation "while that license is the subject of a pending enforcement action." Because "[w]e agree that this construction is reasonable and consistent with the language" of the section at issue and the statutory scheme as a whole, "we defer to the Board's reading of the statute." *Levelle,* 924 A.2d at 1037.[1]

■ We briefly address petitioner's constitutional argument, made for the first time on appeal. Petitioner asserts, in a conclusory fashion, "The Board's incorrect action preventing petitioner from applying for another liquor license at any location for a period of five (5) years under D.C.Code § 25–821(c) deprives [petitioner] of a constitutionally-guarantied [sic] right." Since petitioner did not raise this argument below, it has waived the right to raise it on appeal. *See Allen v. Schultheiss,* 981 A.2d 610, 613 n. 3 (D.C.2009). Nevertheless, we observe that revocation of a license, and the statutory five-year ban on obtaining a license, does not take place unless the licensee has been given a hearing before the Board and an "opportunity to be heard in his or her defense." D.C.Code § 25–821(a) (2001). Petitioner does not contest that it was given a full opportunity to defend against the license revocation at the agency level, or that the Board's findings regarding the basis for revocation were reasonable. We see no reason to address petitioner's unpreserved

---

1. This court "may refuse to adhere strictly to the plain wording of the statute in order to effectuate the legislative purpose...." *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 754 (D.C.1983) (internal citations and quotation marks omitted). This is particularly so when "the literal meaning would produce absurd results." *Sullivan v.* *District of Columbia,* 829 A.2d 221, 224 (D.C. 2003). In the context of a pending enforcement action, we agree with the Board that allowing a licensee to render moot the Board's enforcement authority by voluntarily "cancelling" its license would be at odds with the overall legislative scheme the Board is charged with administering.

due process argument further. The order of the Board is affirmed.

*So ordered.*